UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIGITTE DAVIS,

    Plaintiff,

-vs-

EPITEC, INC.,
a Domestic Profit Corporation,

    Defendant.

Case No. 22-cv-

Hon.

---

Barry S. Fagan  (P34275)
Ryan O. Rosenberg  (P84530)
FAGAN MCMANUS, P.C.
Attorneys for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
bfagan@faganlawpc.com
rrosenberg@faganlawpc.com

---

## COMPLAINT AND JURY DEMAND

There is no other pending or resolved civil action
arising out of the transaction or occurrence
alleged in the Complaint.

NOW COMES Plaintiff, BRIGITTE DAVIS, by and through her attorneys, FAGAN MCMANUS, P.C., and for her cause of action against the Defendant, EPITEC, INC., states as follows:

## JURISDICTIONAL ALLEGATIONS

1.    Plaintiff, BRIGITTE DAVIS (hereinafter "Davis" or "Plaintiff") is an

individual residing in the City of Grosse Pointe Woods, County of Wayne, State of Michigan.

2. Defendant, EPITEC, INC., (hereinafter "Epitec" or "Defendant") is a Domestic Profit Corporation and at all times pertinent hereto did operate its business in the City of Southfield, County of Oakland, State of Michigan.

3. This Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question), and 28 U.S.C. §1367 (supplemental).

4. The amount in controversy is in excess of $75,000.00, exclusive of interest, costs, attorney fees, and punitive damages.

## GENERAL ALLEGATIONS

5. On November 14, 2016, Davis commenced her employment with Epitec as a Delivery Support Specialist.

6. At all times, Davis was employed in Epitec's corporate office as a full-time corporate employee.

7. During her nearly five years of employment with Epitec, Davis performed her job in an excellent manner and received positive annual performance evaluations.

8. In August 2020, Epitec promoted Davis to the position of Employee Care Specialist, where she handled Human Resource ("HR") responsibilities for employee onboarding.

9. In Davis's 2020 performance appraisal, Epitec's Director of Finance, Alecia Yezback, praised Davis's performance, stating that "Brigitte has been such a great addition to the onboarding team… We look forward to Brigitte continuing to improve her communication skills and continuing to be an important part of the onboarding team in 2021."

10. On April 27, 2021, Executive Vice President Tony Hollamon ("Hollamon") held a meeting with Davis about the possibility of placing Davis as an employee with one of Epitec's customers.

11. After this meeting, Hollamon did not follow up with Davis regarding the possibility of being placed as an employee with one of Epitec's customers.

12. In May 2021, Davis began training with Senior HR Manager Lisa Heitzmann ("Heitzmann"), learning HR responsibilities for employee offboarding.

13. On May 26, 2021, Heitzmann messaged Davis, asking if Davis sent her resume to Hollaman.

14. Davis replied that she was not asked to submit her resume, and that she would be sending an email to Hollaman with Heitzmann copied.

15. On May 26, 2021, Davis sent an email to Hollaman and cc'd Heitzmann at 9:49 am.

16. The May 26 email explained that since Hollamon and Davis last spoke in April, Davis found out that she was pregnant and that she was due in January 2022.

17. Davis's May 26 email asked that Davis stay in her current role on the onboarding/offboarding team at Epitec during her pregnancy, rather than being placed at a customer.

18. Davis's May 26 email explained that she would "like to remain as stress free as possible during this pregnancy and would rather not go through the interview process, register for maternity leave with a customer, etc."

19. The May 26 email stated that in the future, Davis would be interested in being placed with a customer.

20. Hollamon replied to Davis at 10:28 am the same day, "**Congratulations, Brigitte!!!! I'll set something up shortly to follow up okay** 😊".

21. Upon information and belief, less than two hours later, Heitzmann reached out to Krystina McCloskey ("McCloskey"), an employee in the same department of Davis who was working part-time, asking McCloskey if she would be interested to work full-time.

22. McCloskey was not pregnant at the time.

23. On May 27, 2021 at 9:30 am, Davis received a video conference

4

call from Hollamon and Finance Team Lead Melissa DuVall.

24. During the video call, Hollaman told Davis that she was no longer a "good fit" with Epitec, thereby suddenly terminating Davis's employment at Epitec.

25. Hollamon offered Davis a severance package for her "situation," which Davis rejected.

26. Upon information and belief, Epitec has replaced Davis with a male employee, Rodrick Lowery.

27. Davis filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about July 28, 2021, alleging that her employment was terminated due to her pregnancy and gender as a female, under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

28. On February 1, 2022, the EEOC issued a Notice of Right to Sue letter regarding her Charge of Discrimination.

## COUNT I
## VIOLATION OF TITLE VII

29. Plaintiff incorporates paragraphs 1 through 28 above as if specifically repeated herein.

30. At all times relevant thereto, Defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964 ("Title VII"), as

5

amended.

31. Title VII prohibits discrimination against any individual with respect to compensation, terms, conditions, privileges or employment because of individual's sex.

32. Title VII's Pregnancy Discrimination Act ("PDA") prohibits unlawful sex discrimination on the basis of pregnancy. 42 U.S.C. § 2000 *et seq*.

33. Defendant violated Title VII's prohibition against sex/pregnancy discrimination and took adverse action toward Plaintiff because of Plaintiff's sex/pregnancy in the following particulars, including, but not limited to:

    a. Discriminating against Plaintiff based upon her pregnancy in violation of the PDA, including referring to Plaintiff's pregnancy as her "situation";

    b. Terminating Plaintiff's employment;

    c. Attempting to replace Plaintiff's position with a non-pregnant female employee;

    d. Upon information and belief, actually replacing Plaintiff's position with a male employee;

    e. Other acts of discrimination to be determined through discovery.

34. As a direct and proximate result of Defendant's discriminatory conduct toward Plaintiff, Plaintiff has suffered and will in the future suffer damages including, but not limited to:

6

      a.      Loss of wages and earning potential;

      b.      Loss of employee benefits;

      c.      Loss of promotional opportunities;

      d.      Loss of professional esteem and consequent damage to Plaintiff's professional career;

      e.      Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

      f.      Other damages to be determined through discovery.

35. The above-referenced discriminatory conduct by Defendant toward Plaintiff was malicious and/or engaged in with reckless indifference to Plaintiff's federally protected civil rights and, as a result, Plaintiff is entitled to punitive damages.

36. Plaintiff also seeks equitable relief, including back-pay, front pay, and other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for Judgment against Defendant for whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and attorney fees. Plaintiff also seeks equitable relief including back-pay, front-pay, or other equitable relief the Court deems appropriate.

## COUNT II
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

37. Plaintiff incorporates paragraphs 1 through 36 above as if

specifically repeated herein.

38. At all times relevant hereto, Defendant was an employer within the meaning of the Elliot-Larsen Civil Rights Act (hereinafter referred to as the "ELCRA").

39. The ELCRA prohibits, among other things, discrimination based upon sex.

40. Sex discrimination includes discrimination based upon pregnancy.

41. Notwithstanding the duties owed to Plaintiff pursuant to the ELCRA, Defendant took adverse action toward Plaintiff because of her sex/pregnancy, including, but not limited to:

   a. Discriminating against Plaintiff based upon her pregnancy, including referring to Plaintiff's pregnancy as her "situation";

   b. Terminating Plaintiff's employment;

   c. Attempting to replace Plaintiff's position with a non-pregnant female employee;

   d. Upon information and belief, actually replacing Plaintiff's position with a male employee;

   e. Other acts of discrimination to be determined through discovery.

42. As a direct and proximate result of Defendant's discriminatory conduct toward Plaintiff, Plaintiff has suffered and will in the future suffer

damages including, but not limited to:

    a.    Loss of wages and earning potential;

    b.    Loss of employee benefits;

    c.    Loss of promotional opportunities;

    d.    Loss of professional esteem and consequent damage to Plaintiff's professional career;

    e.    Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

    f.    Exemplary damages;

    g.    Other damages to be determined.

43.    Plaintiff also seeks equitable relief, including back-pay, front-pay, and other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for Judgment against Defendant in whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and attorney fees. Plaintiff also seeks equitable relief including back-pay, front-pay, or other equitable relief the Court deems appropriate.

## COUNT III
## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

44.    Plaintiff incorporates paragraphs 1 through 43 above as if specifically repeated herein.

45.    At all times pertinent hereto, Plaintiff was an eligible employee

within the meaning of the FMLA, as:

    a.    Plaintiff was employed by Defendant for a time period greater than 12 months;

    b.    During the aforementioned 12 months, Plaintiff worked greater than 1,250 hours.

46.    Defendant is an employer within the meaning of the FMLA, as they employ greater than 50 employees within a 75-mile radius of Plaintiff's worksite.

47.    On May 26, 2021, Plaintiff gave notice to Defendant of her pregnancy, her due date, and her intention to take maternity leave in the future.

48.    Pursuant to the FMLA, Plaintiff would have been entitled to take up to 12 weeks of FMLA leave as a result of her serious health condition, in this case, the birth of a child.

49.    Defendant violated the FMLA by:

    a.    Discriminating against Plaintiff for giving notice of her FMLA-qualifying serious health condition;

    b.    Discriminating against Plaintiff for giving notice of her intention to take FMLA-protected leave;

    c.    Interfering with Plaintiff's right to take FMLA leave;

    d.    Retaliating against Plaintiff for giving notice of her intention to take FMLA leave;

    e.    Terminating Plaintiff's employment;

  f.  Other violations which are yet to be discovered.

50. Defendant willfully violated the FMLA in that it knew that such conduct was prohibited under the statute or acted in reckless disregard of whether such conduct was prohibited.

51. As a direct and proximate result of Defendant's FMLA violations, Plaintiff has suffered, and in the future will suffer damages including, but not limited to, lost wages, employment benefits, and other compensation, past and future.

52. Pursuant to the FMLA, Plaintiff is entitled to:

  a.  All wages, salary, employment benefits, or other compensation denied or lost by reason of the violation of the FMLA;

  b.  Interest;

  c.  Liquidated damages;

  d.  Attorney fees;

  e.  Other damages/remedies available under the law;

  f.  Appropriate equitable relief.

WHEREFORE, Plaintiff prays for judgment against Defendant, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and attorney fees. Plaintiff also seeks equitable relief; including back-

pay, front-pay, or other equitable relief the Court deems appropriate.

                                         Respectfully submitted,

                                         FAGAN MCMANUS, P.C.

                                         By: /s/ *Barry S. Fagan*
                                                Barry S. Fagan  (P34275)
                                                Attorney for Plaintiff
                                                25892 Woodward Avenue
                                                Royal Oak, MI  48067-0910
                                                (248) 542-6300

Dated:  February 4, 2022            bfagan@faganlawpc.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIGITTE DAVIS,

    Plaintiff,

                                                    Case No. 22-cv-

-vs-

                                                    Hon.

EPITEC, INC.,
a Domestic Profit Corporation,

    Defendant.

---

## **PLAINTIFF'S DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, by and through her attorneys, FAGAN MCMANUS, P.C., and hereby demands trial by jury on the above matter.

                                                  Respectfully submitted,

                                                  FAGAN MCMANUS, P.C.

                                                  By: /s/ *Barry S. Fagan*
                                                       Barry S. Fagan  (P34275)
                                                       Attorney for Plaintiff
                                                       25892 Woodward Avenue
                                                       Royal Oak, MI  48067-0910
                                                       (248) 542-6300

Dated:  February 4, 2022                      bfagan@faganlawpc.com